# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:13CV-01102-JHM**

**UNITED STATES OF AMERICA**                                             **PLAINTIFF**

**v.**

**LARRY H. JOEL, ET AL.**                                             **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Larry H. Joel, to dismiss all claims [DN 43], on a cross-motion by Plaintiff, the United States of America, for summary judgment [DN 44], and on a motion by Plaintiff, the United States of America, to amend the complaint [DN 75]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

This matter arises out of an action filed by Plaintiff, the United States of America, seeking to reduce to judgment certain unpaid income taxes and related penalties assessed against Defendant, Larry H. Joel (hereinafter "Joel"), for tax years, 1991, 1993, and 1994, and seeking to enforce a nominee/alter ego tax lien for those taxes and penalties against real property owned by an irrevocable trust – the CTJ Trust. Internal Revenue Service Account Transcripts of Joel reflect the following assessments for unpaid federal income taxes, penalties, and interest calculated as of May 6, 2013: (1) Tax Year 1991: $4,051,614 (fraud penalty); (2) Tax Year 1993: $105,905.34; (3) Tax Year 1994: $78,597.09. (Kevin Kuhner Decl. ¶ 6.) Pursuant to these assessments, Kevin Kuhner, revenue officer with the Internal Revenue Service, avers that Joel is indebted to the United States in the amount of $4,236,116 as of May 6, 2013, plus statutory additions that will continue to accrue until the outstanding balances are fully paid. In an effort to recover the unpaid taxes, the

United States filed a lien against real property known as the Champion Lakes Court residence in Jefferson County, Kentucky. The deed reflects that the property is held in the name of L. Gregory Yopp, Trustee of the CTJ Trust.

On August 26, 2015, Joel filed a motion to dismiss all claims. On September 21, 2015, the United States responded to the motion to dismiss and filed a cross-motion for summary judgment. On September 24, 2015, the Magistrate Judge granted the United States' motion to add WWWM, LLC as a defendant in the action. On November 16, 2015, the case was stayed in order for the parties to engage in settlement negotiations. Because the parties have been unable to resolve their dispute, the Magistrate Judge reinstated the parties' dispositive motions in July of 2018, ordered the United States to serve Defendant WWWM, LLC, and ordered the United States to file a reply to its pending motion for summary judgment. On September 14, 2018, the United States filed a reply in support of its cross-motion for summary judgment. On that same date, the United States moved to amend its complaint to add Defendant WWWM, LLC pursuant to the Magistrate Judge's order of September 24, 2015. No response was filed by the original Defendants.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Motion for Summary Judgment**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

Joel moves to dismiss all claims asserted by the United States under Fed. R. Civ. P. 12(b)(6) on grounds that the statute of limitations established under 26 U.S.C. § 6502 for collection of the taxes and penalties expired before the United States filed its complaint in this action, and the claims are now time-barred. The United States filed a response to the motion to dismiss and a cross-motion for summary judgment arguing that it had demonstrated that (1) Joel is indebted to the United States for a fraud penalty and unpaid federal income taxes, penalties, and interest in the amount of $4,236,166, as of May 6, 2013; (2) CTJ Trust is a sham trust and the alter ego or nominee of Joel and, as such, the federal tax liens attach to Joel's interest in real property located at Champion Lakes Court, Louisville, Kentucky; and (3) the United States' claims are not time-barred. A brief review of the various actions related to Joel's tax liability is helpful in understanding the arguments of the parties.

### A. Background of Civil and Criminal Actions

#### 1. Tax Assessments and Fraud Penalty

On April 20, 1998, the United States assessed a fraud penalty against Joel for the 1991 tax year in the amount of $1,675,322, based on its contention that Joel owed more than $13 million in income tax for tax year 1991, rather than the $7 million he reported, and that he evaded paying that tax obligation. (Compl. at ¶ 13.) On February 15, 1999, the United States then assessed federal income tax and statutory additions against Joel in the amount of $74,038.87 for tax year 1993 and $43,745.66 for tax year 1994. (Compl. at ¶ 22.)

#### 2. Bankruptcy and Criminal Action

On November 8, 2001, Joel filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Kentucky. See In re Joel, Case No. 01-36710 (Bankr.

W.D. Ky. filed Nov. 8, 2001). On February 7, 2002, Joel received his chapter 7 bankruptcy discharge. (Compl. at ¶¶15-16.) The trustee commenced an adversary proceeding on January 29, 2003, in Joel's bankruptcy case seeking to revoke Joel's discharge alleging that Joel failed to list assets on his bankruptcy schedules and that he failed to surrender assets to the chapter 7 trustee. See In re Joel, Case No. 3:07CV-00446-CRS, DN 11 (W.D. Ky. filed 2007).

On January 4, 2005, Joel was indicted in the United States District Court for the Western District of Kentucky under 26 U.S.C. § 7201 for evading his obligations to pay federal income tax for tax years 1991 through 1994. See United States v. Joel, Case No. 3:05-CR-00010-CRS (W.D. Ky. filed Jan. 4, 2005). (Compl. at ¶ 17.) On February 2, 2007, Joel pleaded guilty to Counts 1 and 6 of the Superseding Indictment for evasion of payment of taxes and conspiracy to defraud the United States. Specifically Count 1, Attempt to Evade and Defeat the Payment of Tax, charged that "[Joel] did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by him to the United States of America, for the calendar years 1991 through 1994; in the approximate amount of $2,412,682, by committing the following acts of evasion" including using two purported trusts, "A.J. Trust" and "C.J. Trust," to conceal "his ownership and control of numerous assets, including, but not limited to, . . . real estate . . . ." United States v. Joel, Case No. 3:05-CR-00010-CRS, DN 42 at 6-7 (W.D. Ky. filed Jan. 4, 2005). In the factual basis for the plea, the parties agreed that the majority of the taxes arose from Joel's failure to report approximately $7,750,000 that he received as a "consulting agreement" from Pearl Vision when it purchased a business partially owned by him in 1991. United States v. Joel, Case No. 3:05-CR-00010-CRS, DN 97 at 2 (W.D. Ky. Feb. 2, 2007). The parties further agreed that "[t]he remainder of the tax due and owing is from I.R.S. adjustments related to tax years 1992 through 1994. For those years, the I.R.S. disallowed losses claimed by Joel in those years." Id.

On June 20, 2007, after Joel pleaded guilty in the criminal action, the Bankruptcy Court found that Joel had committed perjury in the bankruptcy proceeding, revoked the discharge order it had issued, and dismissed the taxpayer's bankruptcy proceeding with prejudice.  In re Joel, Case No. 01-36710 at DN 84.  On appeal, the District Court upheld the Bankruptcy Court's decision finding:

> In connection with his bankruptcy case, Joel stated that he settled two trusts for the benefit of his children and denied ownership of the assets in the trust.  However, in the guilty plea entered in the criminal action against him, Joel admitted that he actually owned and controlled a number of assets in the trusts and that he "hid his ownership and control over [the] assets through the use of [the] sham trusts."  Joel failed to list these assets on his bankruptcy schedules. . . . The Bankruptcy Court did not err in inferring that Joel acted fraudulently based on his denial of ownership of the assets in the "sham trusts" and failure to disclose those assets on his bankruptcy schedules.  Such fraudulent conduct justifies a denial of his discharge under 11 U.S.C. § 727.

In re Joel, Case No. 3:07CV-00446-CRS, DN 11 at 2-3.

### 3.  Civil Forfeiture Action

In 2006, the United States filed a forfeiture action that named the property located at Champion Lakes Court as a defendant, as well as other personal property.  See United States of America v. One Tract of Land, 3:06CV-00079-JGH (W.D. Ky. filed 2006).  The United States later moved to dismiss the real property from the forfeiture action noting that the property was subject to an IRS civil collection activity as well.  On November 16, 2009, the Court dismissed the real property located at Champion Lakes Court from the action noting that "the dismissal of the real property from this action does not affect the collection of taxes or enforcement of tax liens, including but not limited to whatever IRS collection procedures may be instituted." United States of America v. One Tract of Land, 3:06CV-00079-JGH at DN 82.

### 4. Second Bankruptcy Proceeding

Joel filed a second chapter 7 bankruptcy petition in 2011. See In re: Larry H. Joel, No. 11-32009 (Bankr. W.D. Ky. filed 2011). The Bankruptcy Court entered a discharge order on March 13, 2012. The United States initiated an adversary proceeding challenging the discharge. The Bankruptcy Court entered a default judgment excepting the taxpayer's liabilities for federal income tax, penalties, and interest for the tax years 1991, 1993, 1994, and 1999 through 2008 from discharge. United States of America v. Larry H. Joel, No. 12-ap-3025, DN 12 (Bankr. W.D. Ky. filed 2012).

### 5. Civil Action for Unpaid Taxes

On November 7, 2013, the United States filed this action seeking (a) to reduce to judgment the tax penalties and assessments it asserts against Joel for tax years 1991, 1993, and 1994 and (b) to foreclose corresponding federal tax liens against the real property located at Champion Lakes Court. As of the date of the complaint, the United States alleges that Joel owes $4,051,614 for the fraud penalty for the 1991 tax year and $184,501 for the tax delinquencies for the 1993 and 1994 tax years.

### B. Tolling of the Statute of Limitations

Title 26 U.S.C. § 6502(a)(1) provides that any action by the United States to collect a tax imposed by Title 26 must be initiated within ten years of the date of the assessment of the tax or penalty. However, 26 U.S.C. § 6503(h)(2) provides that the running of this period of limitations for IRS collection is suspended in a bankruptcy case for the period during which the IRS is prohibited by reason of such bankruptcy case from collecting the tax liability, plus an additional six months. Relatedly, 11 U.S.C. § 362(a)(6) of the Bankruptcy Code automatically stays "any act

to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

In this case, the 1991 fraud penalty and the 1993 and 1994 income taxes were assessed respectively on April 20, 1998, and February 15, 1999. The United States argues that the ten-year period of limitations for it to collect the unpaid federal tax liabilities and penalty assessed against Joel was extended for approximately five and a half years due to Joel's first bankruptcy, the entry of the discharge order and injunction, the revocation of the discharge order, and his second bankruptcy. Specifically, the United States maintains that under 26 U.S.C. § 6503(h), the statute of limitations for collection is "suspended for the period during which the Secretary is prohibited . . . from making the assessment or from collection and . . . 6 months thereafter." The United States contends that the 1991 fraud penalty was subject to the discharge order in the first bankruptcy because it was related to an event that occurred more than three years before the petition date. 11 U.S.C. § 523(a)(7)(B).[1] Similarly, the United States maintains that the 1993 and 1994 assessments were subject to discharge because the returns for those years were last due more than three years before the date of the filing of the bankruptcy petition. 11 U.S.C. §§ 507(a)(8)(A)(i)[2] and 523(a)(1)(A)[3]. Because the outstanding liabilities for the 1991 fraud penalty and the 1993 and 1994 taxes were all subject to a bankruptcy discharge order, the United States maintains that it

---

[1] Title 11 U.S.C. § 523(a)(7)(B) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty-- . . . (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition . . . ." 11 U.S.C. § 523(a)(7)(B).

[2] Title 11 U.S.C. § 507(a)(8)(A)(i) provides: "The following expenses and claims have priority in the following order: (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for-- (A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition-- (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition . . . ." 11 U.S.C.A. § 507(a)(8)(A)(i).

[3] Title 11 U.S.C. § 523(a)(1)(A) provides "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

(1) for a tax or a customs duty-- (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed . . . ." 11 U.S.C.A. § 523(a)(1)(A).

could not collect the liabilities at issue in the current action until the discharge order was revoked on June 20, 2007, because the liabilities were "extinguished" by the discharge order. The United States maintains that as a result of the first bankruptcy, the statute of limitations was extended for 6 months plus the period the automatic stay was in place, plus the period that the discharge injunction was in place. The United States argues that the statute of limitations was further extended by Joel's second bankruptcy when the automatic stay was in effect from April 20, 2011 until March 13, 2012. Accordingly, based on these calculations, the United States contends that pursuant to § 6503(h), the statute of limitations for the 1991 fraud penalty expired on October 25, 2015, and for the 1993 and 1994 income tax liabilities on August 21, 2016. The United States asserts that its complaint filed on November 7, 2013, is timely.

In contrast, Joel argues that the statute of limitations for the claims in question is ten years, and even with applicable tolling provisions, the statute of limitations expired no later than November 30, 2009. Specifically, Joel maintains that because the 1991 fraud penalty and the 1993 and 1994 tax liabilities were automatically excepted from discharge pursuant to 11 U.S.C. §§523(a)(1)(C) and (a)(7),[4] the United States was prohibited from collecting the taxes and penalties *only* until February 7, 2002 when Joel received his discharge, and the limitations period resumed running six months after that date on August 7, 2002, rather than June 20, 2007 as asserted by the United States. As such, Joel argues that the ten-year statute of limitations expired before

---

[4] Title 11 U.S.C. § 523(a)(1)(C) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- (1) for a tax or a customs duty-- (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax . . . ." 11 U.S.C.A. § 523(a)(1)(C).

Title 11 U.S.C. § 523(a)(7) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty--

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition . . . ." 11 U.S.C. § 523(a)(7).

the United States filed this action. Joel further argues that the statute of limitations for collection of taxes as to the CTJ Trust lapsed because the Trust was never in bankruptcy and the automatic stay did not prohibit any collection actions by the United States against the CTJ Trust.

Therefore, the question before the Court is whether the 10-year statute of limitations set forth in 26 U.S.C. § 6502(a)(1) for bringing an action to collect the 1991 fraud penalty and the 1993 and 1994 tax assessments was tolled pursuant to 26 U.S.C. § 6503(h)(2) during the discharge injunction of the original bankruptcy case. The Court will first address the statute of limitations with respect to the 1993 and 1994 tax assessments.

### 1. 1993 and 1994 Tax Assessments

Both parties agree that pursuant to 26 U.S.C. § 6503(h)(2), the running of the statute of limitations for the United States' collection of the 1993 and 1994 tax assessments was suspended in the original bankruptcy case for the period during which the United States was prohibited by reason of such bankruptcy case from collecting the tax liability, plus an additional six months. The United States assessed tax liability against Joel for the 1993 and 1994 income taxes on February 15, 1999. On November 8, 2001, Joel filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Kentucky. On February 7, 2002, Joel received his chapter 7 bankruptcy discharge.

A debtor under chapter 7 of the Bankruptcy Code is generally granted a discharge of all debts that arose before the filing of the bankruptcy petition "[e]xcept as provided in section 523 of this title." 11 U.S.C. § 727(b); In re Hosack, 282 Fed. Appx. 309, 313 (5th Cir. 2008). "[O]ften a discharge order of the bankruptcy court will not state which particular debts are discharged and which are not discharged." Severo v. C.I.R., 129 T.C. 160, 164-165 (U.S. Tax. Ct. Nov. 15, 2007)(citing Bankruptcy Official Form 18, Discharge of Debtor). Here, the parties have not

submitted the 2002 discharge order nor indicated that the discharge order issued in Joel's favor stated which of "petitioners' debts were to be treated as discharged and which of petitioners' debts were to be treated as excepted from discharge." Id. at 165. As a result, the Court must look to 11 U.S.C. § 523(a) to determine whether Joel's debts are excepted from discharge. Section 523(a) provides that a discharge under section 727 "does not discharge an individual debtor from any debt [] for a tax" that is entitled to priority status under § 507(a)(8) of the Bankruptcy Code, specifically in our case for a tax that becomes due within three years before the bankruptcy was filed, or for a tax with respect to which the debtor made a fraudulent return or willfully attempted to evade or defeat such tax. 11 U.S.C. §§ 523(a)(1)(A),(C), § 507(a)(8)(A)(i). See also Hosack, 282 Fed. Appx. at 313.

The United States argues that because the tax returns for the 1993 and 1994 taxes were last due more than three years before the date of the filing of the bankruptcy petition, those taxes were discharged pursuant to 11 U.S.C. §§ 507(a)(8)(A)(i) and 523(a)(1)(A) and could not be collected by the United States until the discharge order was revoked on June 20, 2007. Joel disagrees arguing that the 1993 and 1994 tax liabilities were automatically excepted from discharge because Joel "made a fraudulent return or willfully attempted . . . to evade or defeat such tax" pursuant to 11 U.S.C. §§523(a)(1)(C). And, as a result, the 1993 and 1994 income taxes were excepted from the February 2002 discharge order and remained liabilities of Joel.

**a. Section 523(a)(1)(A)**

Section 523(a)(1)(A) excepts from a debtor's discharge taxes that are entitled to priority status under § 507(a)(8) of this title. 11 U.S.C. § 523(a)(1)(A). "[S]ubsection 507(a)(8)(A)(i) grants priority status and therefore makes nondischargeable any income tax liability that becomes due within three years before the bankruptcy petition was filed." In re Snyder, 1997 WL 375719,

* 3 (M.D. Fla. April 14, 1997) (citing In re Grassgreen, 177 B.R. 976, 981–82 (Bankr. M.D. Fla. 1995)).  Here, Joel's income tax returns were due to be filed on April 15, 1994 and April 15, 1995. Because Joel filed bankruptcy in 2001, Joel's tax liabilities fall outside the three-year period. Therefore, Joel's income tax debt for tax years 1993 and 1994 are not excepted from the discharge pursuant to §§ 523(a)(1)(A) and 507(a)(8).

### b. Section 523(a)(1)(C)

Section 523(a)(1)(C) excepts from a debtor's discharge taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax . . . ." 11 U.S.C. § 523(a)(1)(C).  It is undisputed that on February 2, 2007, Joel pleaded guilty to evading taxes under 26 U.S.C. § 7201.  In his plea agreement, Joel agreed that he owed the Internal Revenue Service over two million dollars as a result of IRS audits for Joel's 1991 to 1994 tax returns.  United States v. Joel, Case No. 3:05-CR-00010-CRS, DN 97 at 2 (W.D. Ky. Feb. 2, 2007). Joel contends that the 1993 and 1994 taxes were automatically excepted from discharge, just as his 1991 income tax assessment, because he filed a fraudulent return.  As such, they were not subject to the discharge injunction, and the United States was free to proceed to collect these debts after the automatic stay terminated.  See In re Gibellino-Schultz, 446 B.R. 733, 740 (Bankr. E.D. Pa. 2011).

The Court disagrees.  The record reflects that neither the United States nor the bankruptcy court recognized fraud associated with Joel's 1993 and 1994 tax returns prior to or throughout the bankruptcy proceedings.  This conclusion is demonstrated by the fact that a fraud penalty was assessed against Joel related to his 1991 tax return for his failure to report approximately $7,750,00 in income, but not his 1993 and 1994 tax returns.  In fact, in the Plea Agreement in the criminal matter, the parties agreed that the "majority of the taxes" arose from Joel's failure to report income

in his 1991 tax return and "[t]he remainder of the tax due and owing is from I.R.S. adjustments related to tax years 1992 through 1994 . . . [where the] I.R.S. disallowed losses claimed by Joel in those years." United States v. Joel, Case No. 3:05-CR-00010-CRS, DN 97 at 2 (W.D. Ky. Feb. 2, 2007).

Finally, "[e]ven if the limitations period were not suspended during the time that the discharge order was in effect, the principle of equitable estoppel would apply in this case." Nelson v. United States, 1994 WL 247214, *4 (E.D. Mich. 1994). Joel, by his own admission, "fraudulently concealed assets in a scheme to use the bankruptcy laws to discharge the taxes that he owed." Id. As recognized by the District Court in Nelson v. United States, "[t]he court cannot conceive of a more classic case where equitable estoppel would block the assertion of the statute of limitations." Id. Thus, Joel is also estopped from claiming that the 1993 and 1994 tax assessments are barred by the statute of limitations. Id.

## 2. 1991 Fraud Penalty

With respect to the 1991 fraud penalty, both parties again agree that pursuant to 26 U.S.C. § 6503(h)(2), the running of statute of limitations for the United States' collection of the 1991 fraud penalty was suspended in the original bankruptcy case for the period during which the United States was prohibited by reason of such bankruptcy case from collecting the fraud penalty, plus an additional six months. The United States assessed the 1991 fraud penalty on April 20, 1998. On November 8, 2001, Joel filed a chapter 7 bankruptcy petition, and on February 7, 2002, Joel received his chapter 7 bankruptcy discharge. Joel maintains that the 1991 fraud penalty was automatically excepted from discharge pursuant to 11 U.S.C. §§523(a)(7) and the statute of limitations began running again on August 7, 2002, six months after Joel received his chapter 7 bankruptcy discharge.

Title 11 U.S.C. § 523(a)(7) provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty--
>
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition . . . .

11 U.S.C. § 523(a)(7). Before examining the requirements contained in § 523(a)(7)(A) and (B), this Court must first resolve the dispute between the United States and Joel as to whether § 523(a)(7)(A) and (B) are "conjunctive or disjunctive requirements—that is, for a debtor to receive a discharge of a tax penalty, must the penalty meet both the conditions of (A) and (B), or only one?" In re McCarthy, 553 B.R. 459, 464 (Bankr. D. Mass. 2016). The Court begins with the statutory language. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).

A review of the language reveals that § 523(a)(7)(A) and (B) are separate and disjunctive exceptions to the premise that tax penalties are non-dischargeable. As noted by the Eleventh Circuit Court of Appeals:

> While the language of this subsection frames nondischargeable tax penalties as an exception to an exception to an exception, once the triple negative is taken into account the meaning of the provision gains clarity. A tax penalty is discharged if the tax to which it relates is discharged, (in the precise terms of the statute, not nondischargeable) or if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition. Since the statute uses the disjunctive, a tax penalty that does not qualify for discharge under one of the two aforementioned circumstances may still qualify under the other.

In re Burns, 887 F.2d 1541, 1544 (11th Cir. 1989); see also, In re Roberts, 906 F.2d 1440 (10th Cir. 1990); In re Bair, 302 B.R. 564 (Bankr. N.D. Ohio 2003); In re Henderson, 137 B.R. 239

(Bankr. E.D. Ky.1991); but see Cassidy v. C.I.R., 814 F.2d 477 (7th Cir. 1987). Therefore, "the use of the word 'or' between paragraphs (A) and (B) of § 523(a)(7) means exactly that: A debtor may receive a discharge of any tax penalty as long as the conditions in *either* paragraph (A) or (B) of § 523(a)(7) have been met." In re Bair, 302 B.R. at 567(emphasis in original). This conclusion "is further supported by the rule of construction contained in 11 U.S.C. § 102(5), directing that the term 'or' is not exclusive." In re McCarthy, 553 B.R. 459, 465 (Bankr. D. Mass. 2016); see also In re Hopkins, 131 B.R. 308, 314 (Bankr. N.D. Tex. 1991). Furthermore, the Court rejects Joel's reliance on the history of the statute to create ambiguity. "[I]n the absence of ambiguity, a court should not try to infer an intent from a statute that is clearly contrary to its language." In re Bair, 302 B.R. at 567 (citing Patterson v. Shumate, 504 U.S. 753 (1992); Connecticut Nat. Bank v. Germain, 503 U.S. 249 (1992)).

In the present case, the tax event which gave rise to the fraud penalty occurred on April 15, 1992, more than three years prior to the filing of the bankruptcy petition. Accordingly, the 1991 fraud penalty was dischargeable under 11 U.S.C. § 523(a)(7)(B).

For the reasons set forth above, the Court finds that the 1991 fraud penalty and the 1993 and 1994 tax assessments were subject to the discharge order issued in the first bankruptcy proceeding. Accordingly, the United States was prohibited from collecting these assessments from November 8, 2001, through June 20, 2007, and the limitations period was extended an additional 2043 days to account for the time which the bankruptcy's court's discharge order was in place, plus an additional six months. Nelson, 1994 WL 247214, at *3; 26 U.S.C. § 6503(h)(2). Under this analysis, the limitations period for the 1991 fraud penalty expired on May 26, 2014, and the limitation period for the 1993 and 1994 tax assessments expired on March 28, 2015. The United States filed the present action on November 7, 2013, well within the limitations period.

### 3. CTJ Trust

Joel argues that 26 U.S.C. § 6503(h) did not toll the statute of limitations for a collection action against the CTJ Trust because CTJ Trust is a separate entity from Joel and never filed bankruptcy. As such, Joel argues that the statute of limitations has run with respect to any claims against CTJ Trust. United States v. GE HFS Holdings, Inc., 2011 WL 5525360, *1-2 (M.D. Fla. Nov. 14, 2011).

The Court disagrees. The United States is not attempting to collect tax liabilities owed by the CTJ Trust; rather, the United States is seeking to collect only those tax liabilities owed by Joel. The United States alleges that the CTJ Trust is a sham trust and an alter ego or nominee of the taxpayer. As such, the applicable statute of limitations is the one that applies only to Joel. United States v. Balice, 2017 WL 3420918, *12 (D. N.J. Aug. 9, 2017), reconsideration denied, 2017 WL 3816093 (D.N.J. Aug. 30, 2017). "[W]here a tax levy or collection of judgment would be timely as against a taxpayer, a tax levy or collection of judgment against the taxpayer's nominee is also timely; no separate claim need be asserted against the nominee." Balice, 2017 WL 3420918, at *12 ) ("[T]he taxpayer and his nominee are considered one and the same; this is not an independent cause of action, but simply an exercise in tracking the taxpayer's assets.") (citing United States v. Scherping, 187 F.3d 796, 800–801 (8th Cir. 1999) (where action to collect judgment against taxpayer is timely filed, statute of limitations does not reset with respect to later-joined alter egos of taxpayer against whom judgment is sought)). Because the same period of limitations applies to the Trust as to Joel, the United States timely filed its complaint against the CTJ Trust.

For the reasons set forth above, the Court denies Joel's motion to dismiss.

### C. Unpaid Tax Assessments – Counts I and II

The record reflects that Joel is indebted to the United States in the amount of $4,236,116,

as of May 6, 2013, plus statutory additions accruing after that date. (Kevin Kuhner Decl. ¶¶6-7.) In Count 1, the United States seeks to reduce to judgment the fraud penalty assessed against the Joel for the 1991 tax year. In Count II, the United States seeks to reduce to judgment the unpaid federal income taxes assessed against Joel for the 1993 and 1994 tax years. The United States argues that because there is no dispute that Joel owes these tax assessments and fraud penalty, judgment should be entered in favor of the United States against Joel with respect to Counts 1 and II of the complaint.

Here, Joel pleaded guilty to violating 26 U.S.C. § 7201 by attempting to evade or defeat the payment of tax that he owed for the 1991 year. As a result, the taxpayer is collaterally estopped from denying liability for the civil fraud penalty assessment the IRS made for the same tax year. Zack v. C.I.R., 291 F.3d 407, 216 (6th Cir. 2002). "[A] conviction for federal income tax evasion, either upon a plea of guilty, or upon a jury verdict of guilty, conclusively establishes fraud in a subsequent civil tax fraud proceeding through application of the doctrine of collateral estoppel." Gray v. C.I.R., 708 F.2d 243, 246 (6th Cir. 1983). As such, there is no genuine dispute of material fact that Joel owes the 1991 fraud penalty assessed against him. In fact, Joel does not challenge the amount of the fraud penalty. The Court grants summary judgment in favor of the United States against Joel as to Count I.

With respect to Count II, the assessments for unpaid federal income tax liabilities have been made against the taxpayer for the years of 1993 and 1994. A tax assessment made by the IRS "is entitled to a legal presumption of correctness" and "establishes a prima facie case of a tax liability." United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002). Once the United States establishes evidence of an assessment, the burden is on the taxpayer to demonstrate that the assessed tax liability is incorrect. United States v. Noble, 3 Fed. Appx. 331, 334 (6th Cir. Jan. 29,

2001).  Joel has not come forward with evidence to rebut the presumed correctness of the 1993

and 1994 tax assessments made against him.  As such, there is no genuine dispute of material fact

that Joel owes the 1993 and 1994 tax liability, and the Court grants summary judgment in favor of

the United States against Joel as to Count II.

### D.  Sham Trust – Count III

The United States seeks to enforce its federal tax lien against the real property located at

Champion Lakes Court pursuant to 26 U.S.C. § 6321.[5]  According to the United States, because

Joel failed to pay the tax assessments made against him after notice and demand for payment,

federal tax liens arose and attached to all real property belonging to Joel.  Although the deed

reflects that the Champion Lakes Court property is held in the name of L. Gregory Yopp, Trustee

of the CTJ Trust, the United States maintains that in Joel's plea agreement, he admitted that the

CTJ Trust is a sham trust and, as a result, CTJ Trust's ownership of the Champion Lakes Court

house is fraudulent and may be disregarded.  The United States argues that as a result of the guilty

plea, the federal tax liens attach to Joel's interest in the Champion Lakes Court property. The

United States moves the Court to find that the tax liens are valid, grant summary judgment in the

United States' favor with respect to Count III of the complaint, and order the sale of the real

property.

A guilty plea is an "'admission of all the elements of a formal criminal charge.'"  In re

ClassicStar Mare Lease Litig., 823 F. Supp. 2d 599, 622 (E.D. Ky. 2011) (quoting United States

v. Skinner, 25 F.3d 1314, 1316 (6th Cir. 1994) (quoting McCarthy v. United States, 394 U.S. 459,

466 (1969)).  "Thus, when a defendant pleads guilty, he admits and is estopped from relitigating

---

[5] Title 26 U.S.C. § 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

the material facts alleged in the information or indictment, and a plaintiff is entitled to introduce pleas from criminal cases in subsequent civil cases to establish 'all matters of fact and law necessarily decided by the conviction.'" In re ClassicStar Mare Lease Litig., 823 F. Supp. 2d 599, 622 (E.D. Ky. 2011) (quoting Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569 (1951) and citing Gray v. C.I.R., 708 F.2d 243, 246 (6th Cir. 1983) (defendant estopped from denying liability in a civil suit for tax fraud after pleading guilty to tax evasion in prior criminal action arising out of same conduct)).

After a review of the plea agreement, the Court finds that Joel is not collaterally estopped from contesting the United States' nominee/alter ego theory with respect to the Champion Lakes Court house. The propriety and legality of the CTJ Trust's acquisition of the Champion Lakes Court house was not necessary to resolve the prior criminal proceeding despite the United States' argument otherwise. See Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008)("[C]ollateral estoppel does not apply where one of the issues forming the basis of the civil lawsuit was not necessarily resolved in the prior criminal proceeding."); Moffett v. Shaw, 2016 WL 426689, *6 (Ky. App. Jan. 29, 2016). The Court agrees with Joel that the language of the plea agreement makes clear that the nominee/alter ego issue regarding the CTJ Trust's ownership of the Champion Lakes Court house was not resolved in the criminal action or the plea agreement. In the plea agreement, Joel admitted that some of the assets owned by the AJ Trust and one asset owned by the CTJ Trust were subject to forfeiture because Joel retained dominion and control of them. Specifically, in the factual basis for the plea, the parties agreed:

> Since at least 1995, Joel has hidden his ownership of and control over a number of assets through the use of the following means: sham trusts; nominee corporations; nominee bank accounts; and other alter ego names. In particular, he has used two trusts, AJ Trust and CTJ Trust, to improperly hold a number of assets because he never gave up dominion and control of the assets.

Joel misused the AJ Trust by holding out the following assets as held by the trust, when he knew they were never properly placed in the trust because he, the purported grantor, exercised full dominion and control over the following assets: 1,004,544 shares of ODC Holdings, 2 Harley Davidson motorcycles, a National City Bank account, and a 2002 white Cadillac Escalade. Joel also never properly placed the following assets in the CTJ Trust because he retained full dominion and control over the following assets: 1,175,000 shares of ODC Holdings.

United States v. Joel, Case No. 3:05-CR-00010-CRS, DN 97 at 2 (W.D. Ky. Feb. 2, 2007). The plea agreement specifically lists the assets over which Joel admitted to retaining dominion and control. Id. at ¶13. The plea agreement also expressly provides that the Champion Lakes Court property is not among those enumerated assets in Paragraph 13 of the plea and that "[t]he defendant understands that the United States does not waive its right to forfeit, either civilly or criminally, the real property located at . . . Champion Lakes Court, in Jefferson County, Kentucky, the record owner being CTJ Trust." Id. at ¶15. Clearly, any issues related to the Champion Lakes Court house were reserved for later adjudication.

As a result, collateral estoppel does not bar Joel from arguing that the CTJ Trust is a valid, legal trust and properly owns the real property in question. United States v. Four Hundred Seventy Seven (477) Firearms, 2010 WL 1981023, *3 (E.D. Mich. May 18, 2010). The Court finds that genuine disputes of material fact exist at this time as to whether CTJ Trust is the alter ego or nominee of Joel with respect to the real property at issue.

In the event the Court were to find that Joel is not collaterally estopped, the United States represents that it will need to conduct additional discovery in this case to establish that CTJ Trust is the alter ego or nominee of the taxpayer, and that the taxpayer is the true owner of the property in question. (Kavitha Bondada Decl. at ¶ 2.) The United States indicates that it has not received the discovery requested from the Defendants. (Id. at ¶¶ 5-9.) Furthermore, prior to the stay of the

action, the Magistrate Judge granted the United States leave to add WWWM, LLC as a defendant in the action.  (Id. at ¶ 10.)  The United States represents that the new corporation may be closely related to the taxpayer or another individual who lives at the property. (Id at ¶ 11.)  Based on this information, the Court will refer this matter to a Magistrate Judge to conduct a scheduling conference to update the discovery and dispositive motion deadlines.

## IV.  MOTION TO AMEND THE COMPLAINT

The United States seeks leave to amend its complaint and for an order directing the Clerk of Court to issue a summons as to WWWM, LLC.  As discussed in detail above, the United States filed a complaint on November 7, 2013, to collect unpaid federal income taxes and penalties and to enforce its tax liens against property located at Champion Lakes Court.  On August 26, 2015, the United States moved to add WWWM, LLC as a party after it learned that WWWM, LLC asserted an interest in the real property in question.  On September 24, 2015, the Magistrate Judge granted the United States' motion to add a party and added WWWM, LLC as a defendant to the action.  However, before the amended complaint was filed, the case was stayed.  When the Magistrate Judge lifted the stay in July 24, 2018, he ordered the United States to serve Defendant, WWWM, LLC.  On August 6, 2018, the United States moved to amend its complaint to add Defendant WWWM, LLC pursuant to the Magistrate Judge's order of September 24, 2015.  None of the original Defendants objected to the motion.

"A party is entitled to amend its pleading once as a matter of course within 21 days of serving it, or, if a responsive pleading is required, within 21 days after service of a responsive pleading or a motion under Federal Rule of Civil Procedure 12(b), (e), or (f)." Detrick v. Heidtman Steel Prod., Inc., 677 Fed. Appx. 240, 246 (6th Cir. 2017) (citing Fed. R. Civ. P. 15(a)).  "Outside of this timeframe, a party may only amend its pleading with the written consent of the opposing

party or leave from the court." Id. However, "[t]he court should freely give leave when justice so requires." Id. "[T]he thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" Moore v. City of Paducah, 790 F.2d 557, 559 (6th Cir. 1986) (internal citations omitted). "'Denial may be appropriate, however, when there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" Detrick, 677 Fed. Appx. at 246 (quoting Benzon v. Morgan Stanley Distributors, Inc., 420 F.3d 598, 613 (6th Cir. 2005) (internal quotation marks omitted)).

After a review of the record, the Court grants the United States' motion to amend its complaint to add Defendant, WWWM, LLC, pursuant to the Magistrate Judge's order of September 24, 2015.

## V.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.  The motion by Defendant, Larry H. Joel, to dismiss the complaint [DN 43] is **DENIED**.

2.  The motion by the Plaintiff, the United States of America, for summary judgment [DN 44] is **GRANTED IN PART AND DENIED IN PART**.  The Court grants summary judgment in favor the United States against Defendant, Larry H. Joel, on Counts I and II.  The Court denies summary judgment on Count III.

3.  The motion by the United States to amend the complaint [DN 75] is **GRANTED**. The Clerk of Court shall file the tendered amended complaint.  The United States shall serve Defendant WWWM, LLC no later than November 5, 2018.  Defendant, WWWM, LLC shall have until November 26, 2018, to answer the Second Amended Complaint.  After that time, the Magistrate

Judge shall conduct a scheduling conference to set discovery and dispositive motion deadlines.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 18, 2018

cc: counsel of record
    Magistrate Judge Lanny King