UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Plaintiff** |
| v. | No. 3:13-cv-1102-BJB |
| **LARRY H. JOEL, ET AL.** | **Defendants.** |

\* \* \*

## MEMORANDUM OPINION & ORDER

In this discovery dispute, Defendant CTJ Trust sought to compel the United States to inventory the assets Dr. Joel forfeited to the United States. The Magistrate Judge denied the request on the ground that the value of these assets was irrelevant to the claims remaining in this case. The Court affirms the Magistrate Judge's ruling, which was not contrary to law, 28 U.S.C. § 636(b)(1)(A), given that the value of forfeited assets does not count against Joel's remaining liability in tax and penalties.

I.

This is the third of three cases against Dr. Larry Joel for tax evasion that occurred between 1991 and 1998.

*First*, a federal grand jury indicted Joel in 2005. *See United States v. Larry H. Joel*, No. 3:05-cr-10 (W.D. Ky. 2005). Joel pleaded guilty under a plea agreement that noted the United States' intention to seek $2,412,682 in restitution payments to the IRS. DN 97 at 5 ¶ 8. The parties agreed that the United States would recommend that the Court "order payment of … restitution payable to the I.R.S.," and that the restitution Joel payed under any such order would be "credited for the value of any property or money already seized by the Internal Revenue Service." *Id.* The sentencing judge, however, did not order restitution. *See* DN 110 at 6.

*Second*, two years later, the United States filed an *in rem* action against several pieces of property that Joel owned or controlled. *See United States v. One Tract of Land, et al.*, 3:06-cv-79 (W.D. Ky. 2007). The United States sought forfeiture of sixteen assets and the contents of several bank accounts. DN 1. The parties "dismissed" a house—located at 2502 Champions Lake Court in Louisville—from the lawsuit. DN 43-7 at 1. But they agreed that "the dismissal of real property from this action does *not* affect the collection of taxes or enforcement of tax liens, including but not limited to whatever IRS collection procedures may be instituted." *Id.* (emphasis added).

*Third*, the United States filed this 3-count civil suit in 2013. The complaint sought: (1) judicial approval of a $1,675,322 fraud penalty imposed by the Treasury Secretary in 2005, along with past due taxes, which together amounted to $4,051,614; (2) a $184,502 income-tax assessment against Joel of for tax years 1993 and 1994; and (3) foreclosure on the IRS's lien on Joel's residence—the same 2502 Champions Lake Court property excluded from the *in rem* case. *See United States v. Larry H. Joel, et al.*, No. 3:13-cv-1102 (W.D. Ky. 2013), DN 79 (First Am. Compl.) at 3, 5, 6. In 2018, the Court granted partial summary judgment in favor of the United States on the first two counts. DN 78 at 22. The Court reserved judgment on the foreclosure count. *Id.* at 16, 20–21. And in 2020, the Court entered final judgment on the first two counts, ordering Joel to pay $4,051,614, plus "statutory additions and interest." *See* DN 124.

CTJ Trust is a defendant in this third lawsuit because it controls the house at Champions Lake Court. Presumably aiming to reduce the total tax liability below that which would require foreclosure, the Trust argued that the value of past-forfeited assets was necessary to determine the amount of Joel's current liability. So the Trust filed an interrogatory asking the United States to:

> Identify and describe each financial or physical asset recovered from, or seized/taken from Larry H. Joel and/or any business entity owned by or in part by Larry H. Joel, by the United States.

Motion to Compel (DN 141) at 1. The United States responded that the value of past-forfeited assets was irrelevant to the remaining foreclosure claim because forfeiture and tax assessments serve different legal purposes. Therefore the government could seek and the Court could impose them in tandem, *without* the setoff implicit in the Trust's discovery request. DN 142 at 8–9. The Magistrate Judge agreed, denying the discovery request as irrelevant. The Order held that the motion to compel "is based on a faulty premise: that the judgment already entered against Dr. Joel would be discounted by the value of the assets Dr. Joel forfeited in the underlying criminal and civil forfeiture actions." DN 143 at 5.

II.

District judges review a magistrate judge's ruling on a non-dispositive matter under a deferential standard, asking if the decision was "'clearly erroneous or contrary to law.'" *United States v. Raddatz*, 447 U.S. 667, 673 (1980) (quoting 28 U.S.C. § 636(b)(1)(A)). And because the determination in question turns on the legal relevance of a discovery request, the Defendant's objection is analyzed under the "contrary to law" standard. *See Grissom v. Ill. Cent. R.R. Co.*, No. 5:14-cv-22, 2014 WL 4999204, at *2 (W.D. Ky. Oct. 7, 2014). A conclusion is contrary to law if it "fails

to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (quotation omitted).

### III.

The crux of this discovery dispute is whether the law contemplates both civil-asset forfeiture and civil-tax liability for the same conduct. If so, then the discovery sought by CTJ Trust is irrelevant, as the Magistrate Judge concluded. If not, then the accounting requested by CTJ Trust, Obj. (DN 149) at 3, is at least relevant to ascertaining the amount Dr. Joel owes the government.

The Supreme Court has described civil forfeiture and civil-tax penalties as distinct remedies with separate purposes. "Civil forfeitures . . . are designed to do more than simply compensate the Government. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct." *United States v. Ursery*, 518 U.S. 267, 284 (1996). Civil penalties, on the other hand, are "designed as a rough form of 'liquidated damages' for the harms suffered by the Government as a result of the defendant's conduct." *Id.* at 283–84. According to the Sixth Circuit, civil tax penalties exist "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Traficant v. Comm'r*. 884 F.2d 258, 263 (6th Cir. 1989) (quotation omitted). Since "[i]n rem civil forfeiture is a remedial civil sanction, distinct from … civil penalties such as fines," both may be imposed without offsetting one another. *See Ursery*, 518 U.S. at 268.

Joel forfeited assets in the *in rem* case under 18 U.S.C. § 981(a)(1)(A), (a)(1)(C). *See* 3:06-cv-79 (DN 54) at 6. The Treasury Department placed them in a Forfeiture Fund that it uses for a variety of law-enforcement purposes set forth by Congress. *See* 31 U.S.C. § 9705 (listing permissible uses of recovered assets). By contrast, the civil-tax penalties ordered in this case are "liquidated damages" designed to reimburse the Government for the expense of investigation and the loss from the taxpayer's fraud. *See Traficant*, 884 F.2d at 263; *Usery*, 518 U.S. at 284. The distinct function served by the two remedies means the payment of one does not reduce the other. Joel and CTJ Trust cannot rely on the value of past assets to reduce the amount of taxes owed in this proceeding. So the Magistrate Judge's denial of the interrogatory request was not contrary to law.[*]

---

[*] WWWM, LLC is a lienholder with a $360,470.80 state-law lien on the real-property at issue in the third count of this case. It filed a separate objection to the denial of CTJ Trust's motion to compel. DN 147. The company argued that "if . . . the government has seized assets worth well more than the amount of the tax lien(s) owed to the government, the government would not have the ability to claim an equitable position ahead of the statutory liens of WWWM, LLC." *Id.* at 2.

Even if the law were different and proscribed the imposition of forfeiture and civil penalties for the same conduct, the Magistrate Judge's ruling would remain correct. That's because the only claim remaining for the court to resolve is whether the United States may enforce its tax lien against property held by Joel and CTJ Trust in a foreclosure proceeding. 26 U.S.C. § 7403(a) permits the Attorney General to "[file] a civil action . . . in a district court … to enforce the lien" in "any case where there has been a refusal or neglect to pay any tax." The statute does not anticipate a preliminary inquiry into the scope of liability of the value of past assets. Instead, the threshold question is merely "whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." *Aquilino v. United States*, 363 U.S. 509, 512–13 (1960). Here, Joel does not dispute he evaded taxes; in fact, he pleaded guilty to it. *See United States v. Larry H. Joel*, No. 3:05-cr-10, DN 97. So the only remaining question for the Court is whether CTJ Trust is Joel's alter ego or an innocent owner of the house, a question that this litigation will ultimately resolve. But the information the Trust sought in the interrogatory is irrelevant to the determination of whether the United States may foreclose under § 7403(a).

IV.

CTJ Trust's objection also takes a cursory post-judgment swipe at the Court's final judgment ordering Joel to pay $4,051,614 in past-due taxes and penalties. *See* CTJ Trust Objection (DN 149) at 7 (citing Rule 60(a) & (b)(1)). This challenge fails at this juncture for three reasons. *First*, a motion objecting to a Magistrate Judge's discovery ruling is not an appropriate vehicle to request post-judgment relief, much less in the cursory fashion seen here. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (quotation omitted)).

*Second*, the objection does not identify any error in calculating the amount of Joel's liability. Throughout this case's eight-year history, the United States has calculated Joel's liability as $4,051,614. *See, e.g.*, First Am. Compl. (DN 79) ¶ 20 (listing amount of Joel's liability for "fraud penalty assessment," which refers to the civil-tax penalty, as "$4,051,614); United States' Cross-Mot. Summ. J. (DN 44-1 at 16) (listing the amount of Joel's civil-tax penalty as $4,051,614); Declaration of IRS Agent (DN 44-9 at 2) (same). And the final judgment issued on January 22, 2020, lists the amount owed on the 1991 fraud penalty as "$4,051,614.00 as of May 6, 2013,

---

WWWM's objection is inappropriate for two reasons. First, as explained above, the value of past-forfeited assets does not bear on the extent of Joel's liability to the United States. Second, third parties are "not entitled to question the tax liability of another, especially when the IRS is involved in collecting the taxes." *Matter of Campbell*, 761 F.2d 1181, 1185 (6th Cir. 1985).

plus all statutory additions and interest accruing from that date until Joel pays the full amount." (DN 124). The consistent representation of the amount in controversy over the course of the litigation undercuts any suggestion that the Court committed a "clerical error" susceptible to rectification under Rule 60(a), much less that the judgment is the product of "mistake, inadvertence, surprise, or excusable neglect," FED. R. CIV. P. 60(b)(1). *See Olle v. Henry & Wright Corp.*, 910 F.2d 357, 363 (6th Cir. 1990) ("Rule 60(a) applies to errors of … calculation.").

*Third*, Joel and CTJ Trust likely forfeited any objection to the United States' calculation by failing to object earlier in the proceeding. Neither Joel nor CTJ Trust raised an objection to the United States' calculation of Joel's civil-tax penalty plus interest. *See* Motion to Dismiss (DN 43) (not challenging the $4,051,614 figure); Brief in Opp. to Sum. J. (DN 47) (same). And as a general matter a party may not "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Nor would it make any sense to address the factual total entered as part of a judgment after the parties have litigated and the Court has resolved a dispute on summary judgment.

\* \* \*

Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b). The Court must curtail discovery requests that exceed this scope. *Id.* The Magistrate Judge's ruling that the interrogatory led outside the scope of this dispute did not contradict or ignore the applicable legal principles.

The Order denying the motion to compel discovery is not contrary to law. The Court therefore overrules CTJ Trust's objections (DN 149), denies WWWM, LLC's objections (DN 147), and affirms the Magistrate Judge's Discovery Order (DN 143).

Benjamin Beaton, District Judge
United States District Court

December 6, 2021